The Judges,
after hearing arguments, were of opinion, that where a link of a long chain of titles is alleged to be lost or destroyed, as in the present case, a considerable degree of latitude was perfectly allowable, in order to reach the justice, of a case of this complexion. They were, therefore, clearly of opinion, that the presiding judge did right in not ordering ■a nonsuit in the first instance. The correct rule of law, in eases of this sort, they took to be this: that wherever there was a total failure of testimony or evidence offered to a. jury in support of an action, there it was the duty of the judg e tu arder a nonsuit, because it would be 9 augtito.vy act, ta new-?. *132 such an unsupported cause to a jury. But wherever there: was testimony, although of a doubtful nature, or a train of facts which were contradictory in themselves, or which admitted of different interpretations; in all such cases, the court ought to send it to the jury, ultimately to determine between the parties. In cases, too, where the general issue is pleaded, juries have a great latitude, and may even find a deed of themselves, if they know it, although not shewn by either of the parties. So also they may find a matter of record, though not shewn in evidence, (contrary to opinions formerly held on this subject,) and as they may find such record, so, by parity of reasoning, they may take instruction concerning it, from every circumstance -which carries the appearance of truth.
plavid. 410, 4U.

t Burr, a97.

Upon these grounds, also, the judges were of opinion, that the presiding judge acted properly in not ordering a nonsuit on the second motion for that purpose, but was regular in sending it to the jury, after the suppletory evidence was given. What were the points then submitted to them ? Why, whether this deed (supposed to have been lost or destroyed) ever existed or not; and, secondly, if it did, whether its loss was sufficiently accounted for or not. 1’hese were facts very proper for their considei-ation ; they were, under all the circumstances of this case, fairly and regularly submitted to them, and this court has no legal grounds to say that their verdict is either against law or evidence.
But the judges said they had a discretionary power of ordering new trials in cases of great intricacy or doubt, for the attainment of justice, without invading the province of a jury on the one hand, or of impeaching verdicts upon legal grounds on the other. And this case appeared to them to be one of this complexion. The parties all claimed under one of the earliest grants made by the former lords proprietors of South Carolina, and by ancient conveyances. That the subdivisions of this barony were made by surveyors of the parties’ own choosing, and there might be much light thrown upon the location of the lands mentioned in the de- *133 iendant’s deed, which appeared to be involved in much doubt and obscurity. That there was still some doubt and uncertainty on the part of the plaintiff, about the existence and loss of the deed from the old landgrave to Waring, notwithstanding the finding of the jury, as the only mention, made of it was the recital in another deed, not between the same parties, but by a person interested in the establishment of this deed to himself.
For all these reasons, they thought it for the furtherance of justice to order a new trial, that this case might be tried before another jury, who probably may not have heard so much of the case as the one -who tried the cause ; and the more especially, as it would, in that case, be only putting the defendant exactly in the situation in which the plaintiff would have been, if the verdict had been in the defendant's favour ; for in that event he would, as a matter of right, have been entitled to another action, under the act of 1744, without impeaching the verdict of a jury.
Rule for new trial made absolute, without costs.
Present, Burke, Guimk, Ydaties and Bay.